UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES L. HUSPON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-109-TWP-DML |
| | ) | |
| MIKE RAINS, Pendleton Correctional Facility | ) | |
| Internal Affairs Officer, Individually | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY DENYING MOTION FOR SUMMARY JUDGMENT
## AND NOTICE OF PROPOSED JUDGMENT

Plaintiff James L. Huspon ("Mr. Huspon"), a prisoner, in the Indiana Department of Correction ("IDOC"), alleges that Defendant Mike Rains ("Defendant") failed to protect him from an attack which occurred on November 8, 2009, in violation of the Eighth Amendment. Defendant seeks summary judgment on his affirmative defense that Mr. Huspon failed to exhaust his available administrative remedies before bringing this suit concerning prison conditions in violation of 42 U.S.C. ' 1997e(a).

For the reasons explained below, Defendants' Motion [Dkt. 60] is **DENIED.**

### I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). In

evaluating a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant=s favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is this: the Prison Litigation Reform Act (APLRA@) requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. ' 1997e(a). *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532 (citation omitted).

"[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 212 (2007). The exhaustion requirement of the PLRA is one of "proper exhaustion" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006).  In order to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 88.  These procedural rules "are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

## II.   UNDISPUTED FACTS

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts are undisputed for purposes of this motion for summary judgment:

1. Indiana Department of Correction ("IDOC") records reflect that Mr. Huspon was an inmate at Pendleton Correctional Facility ("Pendleton") from October 10, 2008, through November 13, 2009.

2. On November 8, 2009, offender Quentin Abbott stabbed Huspon in the back and right shoulder with a knife. Huspon was transported to Wishard Memorial Hospital in Indianapolis, Indiana, via ambulance. Huspon's spine had been stabbed and as a result of the injury he was permanently paralyzed from the chest down.

3. Huspon was discharged from Wishard Memorial Hospital five days later on November 13, 2009, and was admitted to the infirmary at Miami Correctional Facility ("Miami"). Huspon remained in Miami's infirmary until he was discharged on June 15, 2010, and returned to general prison population.

4. An offender grievance program was in place at Pendleton, during Huspon's confinement. See Dkt. 84-6 (Offender Grievance Process, effective date December 1, 2005). Prisoners could grieve certain matters, but not others. Complaints regarding the fear for an offender's safety or the failure of Internal Affairs to provide assistance are issues that could be grieved by an offender. An offender could also submit a grievance regarding staff's failure to protect the offender from other offenders and issues with medical care.

5. The grievance process begins with the offender contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution.

6. If the prisoner is unable to obtain a resolution of the grievance informally, he can submit a formal written grievance to the Grievance Investigator or Administrative Assistant of the facility where he is confined. However, the IDOC grievance policy specifically limits the ability of offenders who have been transferred to another facility to initiate a formal grievance. The policy states:

> An offender may pursue or originate a formal written grievance at a facility from which he/she has been transferred or released from supervision only under the following conditions:
>
> A. If an informal or formal grievance was initiated prior to the transfer or

>    release, the offender may exhaust the administrative remedies available through the grievance process at the former facility. . . .

Dkt. 84-6 at p. 26.

>    7.    Huspon did not submit any grievances while confined at Pendleton.

### III. DISCUSSION

Defendant argues that he is entitled to summary judgment because Mr. Huspon did not avail himself of the administrative remedies that were available to him while confined at Pendleton. This argument is disconnected from the facts of this case. Mr. Huspon was attacked on November 8, 2009. His spine was severed at that time and he was taken by ambulance to Wishard Memorial Hospital ("Wishard") for treatment. There is no evidence that Mr. Huspon was ever returned to Pendleton. Instead he was taken directly from the Wishard to Miami Correctional Facility and remained in the prisons' infirmary for the next seven months. The Court rejects any assertion that Mr. Huspon was required by the grievance policy or the PLRA's exhaustion requirement to initiate the grievance process between the time he was stabbed and the time he was transported by ambulance for treatment at Wishard.

The Court also rejects any assertion that the IDOC's grievance policy required Mr. Huspon to exhaust (or even initiate) his administrative remedies regarding his failure to protect claim prior to the November 8, 2009, attack. Neither the grievance policy nor the PLRA's exhaustion requirement requires inmates to predict future injuries.

The parties' remaining arguments are not as clear cut. Mr. Huspon asserts that administrative remedies were not available after his assault on November 8, 2009, because of his impaired physical and mental condition. In response, the Defendant asserts that even if Mr. Huspon could not submit a grievance while in Miami's infirmary there is no evidence that Mr. Huspon attempted to use the grievance process upon his release from the infirmary and was

prevented from doing so. The Defendant explains that had Mr. Huspon attempted to pursue the grievance process upon release from the infirmary, the facility head could have extended the deadlines for filing a grievance. The following material facts are in dispute:

    1.    At what point did Huspon have the ability to request assistance in filing a grievance?

    2.    Whether prison officials should have known that Huspon wanted to file a grievance, but was unable to do so such that they should have provided direct assistance in filing a grievance consistent with IDOC policy.

    3.    Whether, prison officials led Huspon to believe that filing an administrative grievance was unnecessary in his case because the staff and prison officials had already been notified of the incident and of Huspon's injuries. If prison officials did provide false information an objective test must be applied, "under which the court looks at whether 'a similarly situated individual of ordinary firmness would have deemed the grievance procedures to be available.'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. August 16, 2006) (*quoting Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)).

Given these material facts in dispute summary judgment cannot be entered in favor of the Defendant.

## IV. **NOTICE**

**The Court now gives notice that it intends to grant summary judgment for Mr. Huspon, the non-movant, on a ground not raised by either party pursuant to Federal Rule of Civil Procedure 56(f).** The record reflects that pursuant to the IDOC grievance policy in effect during the relevant time frame, Mr. Huspon did not have administrative remedies available to him following the November 8, 2009 attack. This does not appear to be a case where the prisoner failed to comply with procedural rules, but instead is a case where the grievance process did not provide an avenue for relief for a prisoner in Mr. Huspon's situation.

Strict compliance is required and an offender must follow the facility's grievance procedure. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[I]t is the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the first step in determining whether a prisoner exhausted his available administrative remedies is to review the prison's requirements. In this case, those requirements come from the IDOC's offender grievance process policy. See Dkt. 84-6.

As stated above, the grievance process begins with the prisoner contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution. If the prisoner is unable to obtain a resolution of the grievance informally, he can submit a formal written grievance to the Grievance Investigator or Administrative Assistant of the facility where he is confined. However, the IDOC grievance policy specifically limits the ability of offenders who have been transferred to another facility to initiate a formal grievance. The policy states:

> An offender may pursue or originate a formal written grievance at a facility from which he/she has been transferred or released from supervision only under the following conditions:
>
> A. If an informal or formal grievance was initiated prior to the transfer or release, the offender may exhaust the administrative remedies available through the grievance process at the former facility. . . .

Dkt. 84-6 at p. 26.

As previously acknowledged, Mr. Huspon was not capable of initiating an informal grievance between the time he was stabbed and taken away by ambulance. Mr. Huspon was never returned to Pendleton. If he had returned to Pendleton, he could have followed IDOC policy and exhausted his administrative remedies. Instead, Mr. Huspon was transferred to another facility. Pursuant to IDOC policy, Mr. Huspon could *only* pursue or originate a formal written grievance at Pendleton while incarcerated at Miami *if* he had initiated the grievance process prior to his transfer. Dkt. 84-6 at p. 26 (emphasis added). Under these circumstances there was nothing more to do and Mr. Huspon exhausted his available administrative remedies.

Because the Court has reached this conclusion *sua sponte,* the parties shall have through **Wednesday, February 20, 2013,** in which to file any response to the court's proposal to grant summary judgment in favor of non-movant James L. Huspon on the Defendant's affirmative defense of exhaustion. In the alternative, the Defendant may withdraw his affirmative defense.

**SO ORDERED.**

Date: 02/01/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kelley Jo Johnson
COHEN & MALAD LLP
kjohnson@cohenandmalad.com

TaKeena M. Thompson
COHEN & MALAD LLP
tthompson@cohenandmalad.com

Betsey M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
betsy.isenberg@atg.in.gov

Aaron R. Raff
INDIANA OFFICE OF THE ATTORNEY GENERAL
aaron.raff@atg.in.gov